Benjamin Polycarpo SOLEY, Appellant,

v.

The STAR & HERALD CO. et al.,
Appellees.

No. 24221.

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1968.

Benjamin Polycarpo Soley pro se.

Woodrow deCastro, Balboa, Canal Zone, for appellees.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

GOLDBERG, Circuit Judge:

*A Case of Libel.* On October 24, 1960, a Canal Zone bus stopped suddenly as one of its passengers, Benjamin Polycarpo Soley, was preparing to exit. Soley was thrown from the bus and landed on the ground in a sitting position. He sued the bus company for negligence, claiming damages due to back pains and impotence, but in 1964 the district court sitting without a jury ruled for the bus company. Four days after the judgment a newspaper owned by The Star & Herald Co. published an account of the trial, stating in part:

> "The case was postponed on several occasions, principally for the gathering of medical testimony. It was on this testimony, which proved inconclusive and *showed that the plaintiff had been treated prior to the accident for a condition that he claimed was caused by the fall from the bus,* that the case was dismissed." (Emphasis added.)

One year later Soley filed the suit at bar against The Star & Herald Co. (appellees) in the same district court for libel. His suit was dismissed for failure to state a claim, and he appealed.

Although this is not the first time that Soley has been cast in the role of a de-

famed,[1] his performance in this action has hardly been flawless. Nevertheless, as we extricate fact from fancy out of the uncoordinated allegations in his trial and appellate pleadings, we find some undue haste in dismissing a potential claim.

Soley filed his first libel complaint on April 7, 1965, without the benefit of legal counsel. His complaint alleged that the above account in the appellees' newspaper was "false and malicious" and that the account was "responsible for many attendant failures, which took a heavy toll both financially and physically from one of my next of kin." In an amended complaint, filed almost a year later and with assistance of counsel, he added:

"[T]he facts stated in said publication were wholly false and untrue, scandalous and defamatory and were known to the defendant so to be * * * exposing him [Soley] to disgrace in his occupation and mistrust on his entire family * *." He also referred to "the aforesaid false, scandalous, malicious and defamatory libel of and concerning plaintiff."

On March 21, 1966, the appellees filed a motion "to strike the complaint, as amended * * * on the ground that the said complaint does not state a claim against defendant, upon which relief can be granted." The court granted two requests for continuances, one on Soley's motion. On August 3, 1966, the court heard arguments by Soley and two lawyers for the appellees and sustained the appellees' motion without giving any conclusory reason. No affidavits had been filed, but the trial judge did refer in the following manner to the record in the negligence suit against the bus company, which suit he had tried:

"* * * and the Court having heard the arguments of respective counsel and having referred to the record of the case of Benjamin Polycarpo Soley, Plaintiff, v. Canal Zone Bus Service, Defendant, Civil No. 5173, Balboa Division of the United States District Court for the Canal Zone, and finds that the motion to strike should be

sustained and the plaintiff's complaint dismissed with prejudice.

* * * "

We start from the proposition that Soley in his complaints did state a claim upon which relief could be granted. The "plaintiff's checklist" of allegations in a libel action—publication, untruth, damages, and even malice—was presented to the court in some manner. Because the appellees' motion to strike the complaint failed to rebut any specific contention or to offer an affirmative defense,[2] the trial judge evidently came upon some evidence outside the pleadings which he felt justified the dismissal. Perhaps Soley admitted during an oral hearing that his claim was groundless. (Unfortunately, the hearings were not transcribed.) More likely is the assumption that the trial judge found the newspaper article to be true. Although we have no such statement in the record before us, the trial judge's reference to the negligence action indicates that evidence of Soley's prior treatment for back pains and impotence had been adduced at the negligence trial.[3]

We are advised by Fed.R.Civ. P. 12(b) that a trial court may, in its consideration of a motion to dismiss, treat it as a motion for summary judgment and consider evidence outside the pleadings.[4] Georgia Southern & F. Ry. Co. v. Atlantic Coast Line R. Co., 5 Cir. 1967, 373 F.2d 493, 496, cert. den., 389 U.S. 851, 88 S.Ct. 69, 19 L.Ed.2d 120; Fowler v. Southern Bell Tel. & Tel. Co., 5 Cir. 1965, 343 F.2d 150, 153; Gager v. "Bob Seidel," 1962, 112 U.S.App.D.C. 135, 300 F.2d 727, 731, cert. den., 370 U.S. 959, 82 S.Ct. 1612, 8 L.Ed.2d 825. However, before summary judgment can be granted, the trial judge must be convinced "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). National Screen Service Corp. v. Poster Exchange, Inc., 5 Cir. 1962, 305 F.2d 647, 650–651, Brunswick Corp. v. Vineberg, 5 Cir. 1967, 370 F.2d 605, 611–612. He must not grant summary judgment merely because the complaint and papers in support thereof are drawn unskillfully. Fowler v. Southern Bell Tel. & Tel. Co., supra; Wittlin v. Giacalone, 1946, 81 U.S.App.D.C. 20, 154 F.2d 20, 22 (quoting Professor Moore). Nor may he overlook a factual issue even if the parties stipulated that none existed. United States v. Mullins, 4 Cir. 1965, 344 F.2d 128.

We are not chary of summary judgments, but the mechanics leading to such a judicial denouement should lend themselves to clarification rather than obfuscation.

In the case at bar the appellees submitted no affidavits to support the summary

---

2. See Lefler v. Ruth, 5 Cir., 386 F.2d 934, December 13, 1967, where a dismissal based on the defendant's allegation of privilege was affirmed.

3. The appellees' brief, containing the following one-sentence analysis of the deciding issue in this case, reaffirms our assumption:

"Appellant has failed to include in the record on appeal a copy of the decision in case No. 5173 [the negligence action], hence he has failed to bring before this Court the touchstone upon which must be decided whether or not the Star & Herald's article of April 8, 1964, reports the substance of the said decision falsely."

4. 28 U.S.C.A. rule 12 (1967):
"Defenses and Objections—When and How Presented—By Pleading or Motion —Motion for Judgment on the Pleadings

* * * * *
(b) How Presented. * * * [T]he following defenses may at the option of the pleader be made by motion: * * * (6) failure to state a claim upon which relief can be granted. * * * If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

judgment, and yet such remedy was granted. The court sua sponte furnished the evidence. Moreover, although the judge evidently referred to something in the record of the negligence action, he did not advise the adverse litigants and counsel in their adversary pits. The following analysis by the the Tenth Circuit is relevant:

"The rules relative to the proper use of summary judgment are now well established. See United States v. Kansas Gas and Electric Co., 10 Cir., 287 F.2d 601, and cases cited therein. The remedy is proper where no disputed question of fact is determinative of duty or right and a formal trial would add nothing to the case. But the remedy is drastic, Hunt v. Pick, 10 Cir., 240 F.2d 782, and allows no room for speculation as to the factual background nor the dispositive legal ruling. Here we are not aided by findings, stipulations, pre-trial order or complete discovery admissions. The motion for summary judgment and the order of the court are silent as to what facts form the background for the judgment and are equally silent as to legal grounds. And although we have sometimes assumed the burden of isolating a dispositive legal ground upon clear and undisputed facts, cf. Hunt v. Pick, supra, we are unwilling to sustain a summary judgment where the record is unclear to us on both fact and the legal theory forming the basis of the ruling." Atkinson v. Jory, 10 Cir. 1961, 292 F.2d 169, 171, quoted at Frey v. Frankel, 10 Cir. 1966, 361 F.2d 437, 442.

■■ We are cognizant of the general rule which permits judicial notice of a court's prior cases to support a motion for summary judgment. Ellis v. Cates, 4 Cir. 1949, 178 F.2d 791, 793, cert. den., 1950, 339 U.S. 964, 70 S.Ct. 999, 94 L.Ed. 1373; Fletcher v. Evening Star Newspaper Co., 77 U.S.App.D.C. 99, 1942, 133 F.2d 395, cert. den. 1943, 319 U.S. 755, 63 S.Ct. 1163, 87 L.Ed. 1708; Ackermann v. United States, 5 Cir. 1949, 178 F.2d 983, 985–986, affirmed, 1950, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207. But cf.

Guam Investment Co. v. Central Bldg., Inc., 9 Cir. 1961, 288 F.2d 19, 23–24; Funk v. C. I. R., 3 Cir. 1947, 163 F.2d 796, 800–801; Grand Opera Co. v. Twentieth Century-Fox Film Corp., 7 Cir. 1956, 235 F.2d 302, 307. But the trial court in this case did not inform the parties as to what he noticed. In his order he said he "referred to" the record in the negligence action. Does this mean that he physically and contemporaneously had it before him? Was the record in the courtroom available to counsel and litigants and the court reporter? "To refer" means to allude to or consider. Perhaps the trial judge merely indulged in remembrances of things past.

The appellees would have us soothe our doubts by procedural sedative. They argue that, because Soley has failed to include in the record on appeal the complete transcript of the negligence action, we have no grounds upon which we can reverse the trial court. See footnote 2, supra. However, Soley did file a notice of appeal in which he listed assignments of error and points on appeal. Granted, his points, which were signed by Soley "in Defensa Propria," are sparse on relevancy and lack any sense of cohesion. But we find them sufficient to alert the appellees as to why the summary judgment was being challenged. Moreover, the appellees' own brief acknowledges their complete understanding of the nature of the challenge.

■ The appellees do not claim lack of notice, nor do they attempt to fill the substantive gap with evidence supporting the summary judgment. Instead, they rest their case on the niceties of federal appellate practice. They rely on our Court's lack of patience with appellants who claim specific trial errors but neglect to use the available means of including such errors in the record. Kayo Oil Co. v. Sammons, 5 Cir. 1963, 321 F.2d 729, 731; Murphy v. St. Paul Fire and Marine Ins. Co., 5 Cir. 1963, 314 F.2d 30, cert. den., 375 U.S. 906, 84 S.Ct. 197, 11 L.Ed.2d 146. However, appellees are not devoid of responsibility to inform us. Cf. Fed.R.Civ.P. 75(b), explained in 7

Moore, Federal Practice § 75.06[3] (1966) (and cases cited therein); Fifth Circuit Rule 23(3). That responsibility increases when such appellees seek our stamp of approval on an unarticulated summary judgment for which no justification can be found in the record. We find relevant the following words by Judge Rives:

"Appellee Buckeye first moves to dismiss the appeal on the ground that the record is incomplete and fails to include the depositions filed in the district court. In support of its motion to dismiss, the appellee cites In re Chapman Coal Company, 7 Cir., 1952, 196 F.2d 779, 785; T. V. T. Corporation v. Basiliko, 1958, 103 U.S.App. D.C. 181, 257 F.2d 185, 187; and McBee v. United States, 10 Cir., 1942, 126 F.2d 238. In the first two cited cases the appeal was not dismissed but the judgement was affirmed. In the last cited case the appellant did not designate any evidence whatever to be included in the record and thus failed completely to comply with Rule 75(a), Federal Rules of Civil Procedure. We agree with the Seventh Circuit that the appellee's remedy for any deficiency in the record 'lies not in a motion to dismiss but in proper steps to have the record corrected under Federal Rule 75(h).' Shuttleworth v. Crown Can Co., 7 Cir., 1947, 164 F. 2d 23, 25." Foley Lumber Industries, Inc. v. Buckeye Cellulose Corp., 5 Cir. 1961, 286 F.2d 697, 698, cert. den., 366 U.S. 966, 81 S.Ct. 1922, 6 L.Ed.2d 1257.[5]

■ Federal rules concerning the record on appeal have as their purpose essentially the alleviation of the reproduction burden. See Phillips Petroleum Co.

v. Williams, 5 Cir. 1947, 159 F.2d 1011; Knutson v. Metallic Slab Form Co., 5 Cir. 1942, 132 F.2d 231; 7 Moore, Federal Practice § 75.03 (1966). They were not promulgated to trap unwary litigants. In fact, in the new Federal Rules of Appellate Procedure, which were adopted by the Supreme Court on December 4, 1967, and which become effective on July 1, 1968, Rule 2 specifically provides for equity considerations in cases similar to the one at bar. We quote that rule here:

"Suspension of Rules. In the interest of expediting decision, or for other good cause shown, a court of appeals may, except as otherwise provided in Rule 26(b) [Enlargement of Time], suspend the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction."

The Advisory Committee's Note to Rule 2 contains the following sentence: "The rule also contains a general authorization to the courts to relieve litigants of the consequences of default where manifest injustice would otherwise result." 384 F.2d Advance Sheet No. 3, January 1, 1968, page 66 of the special section on the new rules. Although the new Rule 2 is not applicable to this case, Judge Rives' opinion in the *Foley Lumber* case, quoted supra, demonstrates that equity considerations are not new to appellate procedure. We find such considerations also in Jaconski v. Avisum Corp., 3 Cir. 1966, 359 F.2d 931, 936–937, in which a problem quite similar to the one at bar was handled in the following manner:

"The trial memoranda of Avisun and Pangborne [defendants-appellees]

---

5. Federal Rule 75(h) was included, with minor changes not relevant to this case, in the 1966 revised rules as Rule 75(d). We quote in part:
   "If anything material to either party is omitted from the record by error or accident or is misstated therein, *the parties by stipulation,* or the district court, either before or after the record is transmitted to the court of appeals,

or *the court of appeals, on proper suggestion or of its own initiative,* may direct that the omission or misstatement be corrected, and if necessary that a supplemental record be certified and transmitted." Fed.R.Civ. P. 75(d) (U.S.C.A.Supp.1967). (Emphasis added.)
See also footnote 6, infra.

made the jurisdictional amount an issue in the case. But Jaconski's [plaintiff-appellant] counsel filed no answering memorandum so far as we are aware. On the other hand, neither Avisun nor Pangborne moved to dismiss the action for lack of jurisdiction. The court apparently entered the order of dismissal *sua sponte*. Perhaps the unrecorded proceedings at the pretrial conference would disclose an oral motion but without that record we are uninformed as to what transpired and, as has been stated, we are entitled to know on what basis the court below dismissed the case. Cf. Arnold v. Troccoli, 344 F.2d 842 (2 Cir. 1965). The trial court must examine all available evidence. Gilbert v. David, 235 U.S. 561, 568, 35 S.Ct. 164, 59 L.Ed. 360 (1915). Cf. Sansone v. Ocean Accident and Guarantee Corp., 228 F.Supp. 554 (E.D.La.1964). Moreover, we cannot conclude that the arguments of Avisun and Pangborne based on the failure of Jaconski to make use of Rule 75(n)[6] is a factor requiring the determination of this case in their favor. The use of Rule 75(n) is permissive, not mandatory. In the instant case we must deal with the jurisdictional facts as they are presently on the record. The court below on remand must seek to have counsel make available on the record, for the information of the reviewing tribunal, *sufficient facts to determine*

the good faith of the allegations of the complaint. Another pretrial conference should be held and pretrial to be effective must be full and adequate."

■ Our shifting part of the burden to the appellees should not be taken as a comment on the merits. If the record of the negligence action in whole or in part can be identified and will support a summary judgment, our opinion will not prejudice the appellees' rights to avoid troublesome litigation. See, for example, Robbins v. Milner Enterprises, Inc., 5 Cir. 1960, 278 F.2d 492, 496–497; Duke v. Sun Oil Co., 5 Cir. 1963, 320 F.2d 853, 866; Fletcher v. Hightower, 5 Cir. 1967, 381 F.2d 371; Shelkofsky v. Broughton, 5 Cir., 1968, 388 F.2d 977. But justifiable impatience does not in itself justify summary judgment.

■ On the other hand, if no such record exists or if the record does not clearly justify the challenged newspaper words, a trial may be required.[7] We will not affirm a summary judgment based on the solitary cerebration of the trial court. Memories deceive, and litigants should have the opportunity to challenge even a judge's recollections.

Truth seeking in adversary litigation must entail a full panoply of informatory devices, and while many of the formalities of yore have succumbed, litigants and counsel must not be required to be clairvoyant. They cannot read over the

---

**6.** In 1966 Rule 75(n) was expanded slightly and was included in the revised rules as Rule 75(c). We quote it in full:
"If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or proposed amendments thereto within 10 days after service. Thereupon the statement and any objections or proposed amendments shall be submitted to the district court for settlement and approved and as settled and approved shall be included by the clerk of the district court in the record on ap-

peal." Fed.R.Civ.P. 75(c) (U.S.C.A. Supp.1967).
See 7 Moore, Federal Practice § 75.07 (1966). The new Federal Rules of Appellate Procedure list this same section as Rule 10(c). According to the revisors Rule 10 "is derived from FRCP 75(a), (b), (c) and (d) and FRCP 76, without change in substance." 384 F.2d Advance Sheet No. 3, January 1, 1968, page 73 of the special section on the new rules.

**7.** If a trial is required, we recommend Judge Wisdom's recent opinion in Belli v. Orlando Daily Newspapers, Inc., 389 F.2d 579, December 28, 1967, as a procedural aid. We add that in the *Belli* case the plaintiff did not allege damages. (See footnote 7 of that case and the accompanying text.)

**370**

judge's shoulder or penetrate his memory. Nor can we. From Shakespeare's *Hamlet* to Albee's *Tiny Alice* soliloquies and asides have been shared with the audience.

Reversed and Remanded for proceedings consistent with this opinion.