BOLIN, Justice.
A.W., a minor child, by and through her next friend Kelli Hogeland, and W.B., a minor child, by and through his next friend Shara Fortenberry, appeal from the trial court’s order denying their motion to alter, amend, or vacate (1) a summary judgment in favor of J. Walter Wood, Jr., executive director of the Department of Youth Services (“DYS”); (2) the dismissal of A.W.’s and W.B.’s claims against defendants Randy Fuller, superintendent of the Shelby County Board of Education, and James Carr, superintendent of the Blount County Board of Education; and (3) a judgment in favor of Alabama Youth Homes, Inc. (“AYH”), based on partial findings.

Underlying Facts and Procedural History

DYS operates facilities for, and provides social and educational services to, delinquent youth committed to its custody in accordance with state law. DYS has its own special school district consisting of five separate schools. The DYS school district has its own board of education, which formulates and implements educational policy and procedures that comply with state law and Alabama Department of Education guidelines. Wood, as executive director of DYS, is ultimately responsible for ensuring that the education program at DYS facilities fully complies with state law and with Department of Education guidelines and/or regulations.
Because of the great number of juveniles placed in its custody, DYS contracts with independent entities throughout Alabama to provide some housing for juveniles committed to the custody of DYS. Pursuant to those contracts, these independent entities are required either to provide or to arrange for education that complies with state law and Department of Education regulations. In this case, DYS contracted with AYH to operate facilities in Blount County and in Shelby County at which A.W. and W.B. would be housed and educated. A.W. was assigned to AYH’s Oneonta Group Home for Girls in Blount County, and W.B. was assigned to AYH’s Westover Group Home in Shelby County. Pursuant to the contract between DYS and AYH, AYH agreed that A.W. and W.B. would be educated through the local school authorities, i.e., the Blount County Board of Education and the Shelby County Board of Education, respectively, and that their education would comply with state law and Department of Education regulations.
On May 21, 2008, A.W., on behalf of herself and all others similarly situated, sued Wood and AYH. A.W.’s complaint sought injunctive relief as well as compensatory and punitive damages for negligence and wantonness based on Wood and AYH’s alleged failure to provide A.W. with adequate educational programs and opportunities. Specifically, A.W. alleged that Wood and AYH denied her the opportunity to attend public school in the district in which she lived — Blount County — and that she was instead required to attend the Blount County Alternative School, where she received only approximately four hours of educational instruction per day and was not given access to the course of study required for graduation from high school.
*754 In September 2008, A.W. filed a first amended complaint to add W.B. as a named plaintiff. W.B. alleged that although the Westover Group Home is zoned for Chelsea High School, Wood and AYH failed to enroll him there and that they instead required him to attend the Shelby County Alternative School, where he did not receive the core curriculum and course of study mandated by state law and by the Department of Education. A.W. and W.B. are hereinafter sometimes referred to collectively as “the plaintiffs.”
On September 10, 2008, W.B. moved for a preliminary injunction, seeking an order requiring-Wood and AYH to enroll him in Chelsea High School. On October 28, 2008, the trial court held a hearing on the request for an injunction and ultimately denied the request. On March 19, 2009, AYH moved for a summary judgment. That same day, Wood moved for a summary judgment. Wood argued, among other things, that he was immune from liability. On March 20, 2009, AYH adopted all the arguments Wood made in his motion. On March 24, 2009, the plaintiffs filed a motion to compel and for sanctions as deemed appropriate because counsel for Wood had not produced requested documents regarding DYS’s policies and procedures in relation to the plaintiffs’ claims and because Wood’s counsel had canceled Wood’s scheduled deposition. The plaintiffs argued that the requested documents and deposition were necessary for them to be able to respond to Wood’s and AYH’s summary-judgment motions. Immediately before a proceeding at which ore tenus evidence was to be presented, the trial court denied both Wood’s and AYH’s summary-judgment motions as untimely.
The trial court held a proceeding at which evidence was presented ore tenus on March 30, 2009, and March 31, 2009, during which the plaintiffs sought to show that Wood and AYH had violated 1) Ala. Code 1975, § 16-1-1, which provides that the scholastic day shall not be less than six hours of actual teaching per day unless otherwise ordered by the county or city board of education; 2) Rule 290-3-1.02, Alabama Administrative Code (State Department of Education), which, in part, requires that the length of a school day shall be six hours, exclusive of lunch and recess; and 3) Ala.Code 1975, § 16-6B-2, which, in part, establishes the core curriculum and minimum electives to be offered. During the first day of the trial, Randy Hale, the program director for AYH, and Matt Foster, a former AYH clinical director, testified. Their testimony established that only the local education authorities, i.e., the Blount County Board of Education and the Shelby County Board of Education, had the authority to decide where a child in its jurisdiction went to school, regardless of the zone in which the child lived, and that neither Wood nor AYH had that authority. Hale, however, testified that he was aware that A.W. and W.B. attended school only 3 hours and 15 minutes per day. He stated that he had inquired of the Blount County Board of Education about whether the hours were sufficient and was told that “everything was fine.”
The plaintiffs then called Wood to testify. At that time, the trial court indicated that Wood had been scheduled for a deposition pursuant to the trial court’s order and that he had not appeared. The court ordered that the hearing be postponed until March 31, 2009, and that Wood immediately sit for a deposition by the plaintiffs, which Wood did the afternoon of March 30, 2009. The ore tenus proceedings resumed on March 31, 2009, and Wood testified the second day of the hearing. After hearing the evidence, the trial judge repeatedly stated that the plaintiffs had sued the *755 wrong parties and that both AYH and Wood had fulfilled their responsibilities regarding the plaintiffs’ education. Specifically, the trial court stated that once A.W. and W.B. arrived at the Oneonta and Westover Group Homes in Blount County and Shelby County, respectively, AYH’s only responsibility was to enroll them in the respective school districts; thereafter, all decisions relating to their education, including placement, hours, and curriculum, were strictly within the purview of the local educational authorities. The trial court continued the trial until June 15, 2009, to allow the plaintiffs an opportunity to amend their complaint, suggesting that they add the respective boards of education as defendants. On April 2, 2009, the plaintiffs filed a second amended complaint to add as defendants Fuller, the superintendent of the Shelby County Board of Education, in his individual capacity, and Carr, the superintendent of the Blount County Board of Education, in his individual capacity. Thereafter, Fuller and Carr filed a joint motion to dismiss. On April 20, 2009, Wood filed a second motion for a summary judgment, now attaching affidavits and other documents in support of his immunity defense. AYH filed a motion for a judgment based on partial findings. On May 5, 2009, the plaintiffs filed a response to Fuller and Carr’s motion to dismiss. On May 8, 2009, the plaintiffs filed a consolidated response to Wood’s summary-judgment motion and to AYH’s motion for a judgment on partial findings. With regard to Wood, the plaintiffs argued that the summary-judgment motion was untimely and not compliant with Rule 56, Ala. R. Civ. P. In response to AYH’s motion, the plaintiffs argued that Fuller’s and Carr’s affidavits directly conflicted with the deposition and trial testimony of Hale, Foster, and Wood, because the trial testimony indicated that the educational opportunities, hours, and curriculum offered to the plaintiffs were decided by AYH pursuant to AYH’s agreement to provide for the education of students placed by DYS at its facilities.
On May 12, 2009, the trial court granted Fuller and Carr’s motion to dismiss; it granted Wood’s motion for a summary judgment, and it granted AYH’s motion for a judgment on partial findings. On June 11, 2009, the plaintiffs, pursuant to Rule 59(e), Ala. R. Civ. P., filed a motion to alter, amend, or vacate the. trial court’s judgment, which was denied.

Fuller and Carr’s Motion to Dismiss

The plaintiffs’ amended complaint adding Fuller and Carr as defendants alleges:
“16. That [Fuller and Carr] individually or acting in concert failed to provide to Plaintiffs the educational opportunities, programs, courses guaranteed and mandated by the Alabama Constitution, state law and agency regulations.
“17. That [Fuller and Carr] willfully, fraudulently, in bad faith, without authority or under a mistaken interpretation of the law and in violation of state law and regulation denied Plaintiffs the educational programs and opportunities to which they were entitled while committed to the legal custody of [DYS].”
On April 17, 2009, Fuller and Carr filed a motion to dismiss the claims against them in their individual capacities, asserting, in part, the defense of “governmental immunity.” Their motion does not state or specify that State-agent immunity is being asserted; rather, it merely states that suing them in their individual capacities is inappropriate — a proposition for which they cited no authority. Fuller and Carr submitted their individual affidavits with their motion to dismiss. The plaintiffs filed a response in opposition, asserting that they had stated a'Viable claim that Fuller and Carr had violated certain state *756 laws and Department of Education regulations. The trial court granted Fuller and Carr’s motion to dismiss without specifying the basis for the dismissal.
On appeal, both sides assert that the applicable standard of review in this case is the standard applicable to a Rule 12(b)(6), Ala. R. Civ. P., dismissal for failure to state a claim, namely, that the reviewing court does not consider whether the plaintiff will ultimately prevail, but only whether the plaintiff may possibly prevail, citing Nance v. Matthews, 622 So.2d 297 (Ala.1993). However, “where matters outside the pleadings are considered on a motion to dismiss, the motion is converted into a motion for summary judgment as provided in Rule 12(c), [Ala. R. Civ. P.], regardless of its denomination and treatment by the trial court.” Boles v. Blackstock, 484 So.2d 1077, 1079 (Ala.1986).
“When the trial court is called upon to consider a Rule 12(b)(6) motion, it must examine the allegations in the complaint, or, as in the instant case, the counterclaim, and construe it so as to ‘resolve all doubts concerning [its] sufficiency in favor of the [claimant].’ In so doing, the court does not consider whether the claimant will ultimately prevail, only whether he has stated a claim under which he may possibly prevail. Fontenot v. Bramlett, 470 So.2d 669, 671 (Ala.1985), citing First National Bank v. Gilbert Imported Hardwoods, Inc., 398 So.2d 258 (Ala.1981), and Karaqan v. City of Mobile, 420 So.2d 57 (Ala.1982).
“If the motion, however, is converted to a Rule 56 [ (c), Ala. R. Civ. P.,] motion for summary judgment, the ‘moving party’s burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law.’ Papastefan v. B & L Const. Co., 356 So.2d 158 (Ala.1978), citing C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1366 (1969).”
Hightower & Co. v. United States Fidelity & Guar. Co., 527 So.2d 698, 702-03 (Ala.1988).
In the instant case, nothing in the record expressly indicates which material the trial court considered in ruling on Fuller and Carr’s motion to dismiss. The trial court did not draft an order granting the motion. Instead, it merely made the following notations on the face of the motion: “granted” and “dismissed.” Thus, it would appear that, in ruling on the motion to dismiss, the trial court necessarily considered Fuller’s and Carr’s affidavits. Moreover, there is no evidence in the record to indicate that the trial court gave the parties notice of its intent to convert the motion to dismiss into a motion for a summary judgment. See Hales v. First Nat'l Bank of Mobile, 380 So.2d 797 (Ala.1980) (noting that the record must demonstrate that all parties were aware of the trial court’s intention to treat the motion as one converted to a summary-judgment motion). In Graveman v. Wind Drift Owners’ Ass’n, Inc., 607 So.2d 199, 202 (Ala.1992), this Court stated:
“The requirements of Rule 56 apply to a converted Rule 12(b)(6) motion. Hales v. First Nat'l Bank of Mobile, 380 So.2d 797, 799 (Ala.1980). Together, Rules 12 and 56 require that the nonmovant receive (1) adequate notice that the trial court intends to treat the motion as one for summary judgment and (2) a reasonable opportunity to present material in opposition. Davis v. Howard, 561 F.2d 565, 571-72 (5th Cir.1977); Hales, at 799. This Court has held that the same 10 days’ notice required when a party moves for summary judgment is also required for a converted motion for summary judgment. Hales, at 799. *757 This Court has further held that ‘the record must adequately demonstrate that all counsel were aware of the intentions of the [trial] judge to treat the motion as converted.’ Hales,' at 799-800 (quoting Davis, at 571-72).”
See also Drees v. Turner, 10 So.3d 601, 603 (Ala.Civ.App.2008) (“[Ajlthough neither the parties nor the trial court had apparently been aware that the matter had been converted into a motion for a summary judgment, the failure to notify the parties that the motion had been converted was prejudicial to both parties and, therefore, the cause was due to be remanded.”); Jacobs v. Whaley, 987 So.2d 1143, 1147 (Ala.Civ.App.2007) (remanding case when trial court failed to communicate to the parties its intention to treat a motion to dismiss as one for a summary judgment, thereby failing to observe the procedural requirements of Rule 56(c), Ala. R. Civ. P.).
. Consequently, because it is not clear from the record whether the trial court in this case communicated to either side its intention to treat the motion to dismiss as one for a summary judgment, we remand the cause to assure that the procedural safeguards of Rules 12(b) and 56(c), Ala. R. Civ. P., are afforded both sides. Upon remand, “the trial court is directed to conduct a proper hearing, affording both parties proper notice pursuant to Rule 56, to determine whether any genuine issue of material fact is present.” Hightower, 527 So.2d at 703.

Wood’s Motion for a Summary Judgment

On March 19, 2009, Wood first moved for a summary judgment, arguing, among other things, immunity. No supporting materials were attached to the March 19, 2009, summary-judgment motion. The trial court denied the motion as untimely. During a continuance of the trial, Wood filed a second motion for -a summary judgment, now attaching affidavits and other support in favor of his immunity argument. In response to Wood’s motion, the plaintiffs argued that the summary-judgment motion was not proper because it was untimely and because Wood failed to file a narrative summary iii support of the motion as required by Rule 56, Ala. R. Civ. P. Following the trial court’s entry of a summary judgment 'in Wood’s favor, the plaintiffs filed a Rule 59, Ala. R. Civ. P., motion, again arguing that Wood’s summary-judgment motion was untimely and not in compliance with Rule 56. The plaintiffs argued that at the time the trial court granted the motion, the trial proceedings were in recess during the direct examination of Wood and that this examination had already been delayed by the actions of Wood’s counsel in not having Wood appear at the scheduled deposition. They also argued that Wood would have had the opportunity at the close of the plaintiffs’ case to seek relief.
“Ordinarily, this Court reviews a summary judgment de novo.” Verneuille v. Buchanan Lumber of Mobile, Inc., 914 So.2d 822, 824 (Ala.2005). However, that standard of review is not appropriate here because the plaintiffs, in both their response to the summary-judgment motion and their postjudgment motion, argued only that Wood’s summary-judgment motion was procedurally defective. See Verneuille, 914 So.2d at 824 (noting that de novo review of a summary judgment is not appropriate where the case “does not involve the issue whether the record shows the absence of a ‘genuine issue as to any material fact and that the [movant] is entitled to a judgment as a matter of law.’ Rule 56(c)(3), Ala. R. Civ. P.”). Thus, this Court will apply the standard of review applicable to the. denial of a- Rule 59(e), Ala. R. Civ. P., postjudgmeht motion to alter, amend, or vacate a judgment. *758 “Whether to grant relief under Rule 59(e) ... is within the trial court’s discretion.” Bradley v. Town of Argo, 2 So.3d 819, 823 (Ala.2008).
The plaintiffs first argue that Wood’s summary-judgment motion was untimely. The facts indicate that Wood first moved for a summary judgment on March 19, 2009. The trial court denied this motion as being untimely. The trial court also deemed the motion incomplete because discovery in the case had not been completed. The trial court thereafter conducted a bench trial on March 30, 2009, and March 31, 2009. On the second day— March 31, 2009 — the trial court indicated its intention to continue the trial, which was ultimately set to resume on June 15, 2009. On April 2, 2009, the plaintiffs filed a second amended complaint to add Fuller and Carr as defendants. On April 20, 2009, Wood filed a renewed motion for a summary judgment on all claims alleged in the plaintiffs’ complaint and first amended complaint — based on the fact that all discovery had been completed. Wood also submitted the summary-judgment motion as a new motion based on all claims asserted in the plaintiffs’ second amended complaint. The motion was accompanied by a 35-page brief that referenced 17 attachments, including deposition transcripts, discovery responses, and the preliminary-injunction transcript. We presume under these facts that the trial court deemed Wood’s motion timely because it granted the motion on the merits. “ ‘The trial court is afforded a wide range of discretion in applying the time requirements of Rule 56.’ ” Verneuille, 914 So.2d at 824 (quoting Hale v. Union Foundry Co., 673 So.2d 762, 764 (Ala.Civ.App.1995) (Crawley, J., dissenting) (emphasis added in Vemeuille)). Moreover, Rule 45, Ala. R.App. P., states that “[n]o judgment may be reversed or set aside ... for error as to any matter of pleading or procedure, unless ... the error complained of has probably injuriously affected substantial rights of the parties.” Under the circumstances, the plaintiffs rights were not substantially prejudiced. Wood filed his summary-judgment motion on April 20, 2009 — well before the June 15, 2009, trial date.
The plaintiffs’ argument that Wood’s summary-judgment motion failed to include a narrative summary in support of its motion is without merit. Rule 56(c), Ala. R. Civ. P., provides:
“(1) Form of Motion and Statement in Opposition Thereto. The motion shall be supported by a narrative summary of what the movant contends to be the undisputed material facts; that narrative summary may be set forth in the motion or may be attached as an exhibit. The narrative summary shall be supported by specific references to pleadings, portions of discovery materials, or affidavits and may include citations to legal authority. Any supporting documents that are not on file shall be attached as exhibits. If the opposing party contends that material facts are in dispute, that party shall file and serve a statement in opposition supported in the same manner as is provided herein for a summary of undisputed material facts.”
(Emphasis added.)
As previously noted, Wood’s summary-judgment motion included a 35-page brief in which he argued the issue of immunity; the brief referenced numerous exhibits and attachments. In International Fidelity Insurance Co. v. Gilliam, 659 So.2d 24 (Ala.1995), this Court addressed claims that a movant had failed to comply with the narrative-summary requirement of Rule 56(c)(1). This Court concluded that the motion for a summary judgment “included exhibits sufficient to meet the narrative summary requirement of Rule *759 56.” 659 So.2d at 27. Likewise, Wood’s submission of the facts, which are contained in the argument section of his accompanying brief, with references to specific attachments/exhibits, is sufficient to meet the requirements of Rule 56. On appeal, the plaintiffs argue alternatively that the summary judgment was not proper because, they argue, Wood was not entitled to immunity. However, the plaintiffs failed to raise this argument before the trial court in either their response to Wood’s summary-judgment motion or in their postjudgment motion for relief from the judgment. This Court will not place a trial court “ ‘ “in error on matters which the record reveals it neither ruled upon nor was presented the opportunity to rule upon.” ’ ” Verneuille, 914 So.2d at 824 (quoting J.K. v. Lee County Dep’t of Human Res., 668 So.2d 813, 817 (Ala.Civ.App.1995), quoting in turn Wilson v. State Dep’t of Human Res., 527 So.2d 1322, 1324 (Ala.Civ.App.1988) (emphasis added in Vemeuille)). Accordingly, the trial court did not exceed its discretion in denying the plaintiffs’ postjudgment motion based on the plaintiffs’ argument that the motion was procedurally defective. The summary judgment is, therefore, affirmed.

AYH’s Motion for a Judgment Based on Partial Findings Pursuant to Rule 52(c), Ala. R. Civ. P.

As previously noted, the trial court, during the second day of the ore tenus hearing on March 31, 2009, continued the trial in order to allow the plaintiffs to amend their complaint to add defendants. The trial was ultimately continued to June 15, 2009. The plaintiffs thereafter amended their complaint to add Fuller and Carr as defendants. Fuller and Carr filed a joint motion to dismiss, which was accompanied by their individual affidavits. At the same time, AYH filed a Rule 52(c), Ala. R. Civ. P., motion for a judgment based on partial findings, which the trial court granted. The plaintiffs appeal the denial of their postjudgment motion to alter, amend, or vacate the judgment in favor of AYH.
Rule 52(c), Ala. R. Civ. P., provides:
“(c) Judgment on Partial Findings. If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue, or the court may decline to render any judgment until the close of all the evidence. Such a judgment may be supported by findings of fact and conclusions of law.”
On appeal, the plaintiffs argue primarily that they were not fully heard on AYH’s liability because, they say, they were denied the opportunity to offer additional testimony from Fuller and Carr regarding the actual agreements between AYH, on the one hand, and the Blount County Board of Education and the Shelby County Board of Education, on the other hand. More specifically, they argue that “they had yet to offer testimony and evidence regarding the actual agreements and practices of [AYH], as evidenced in part from the affidavits of Randy Fuller and James Carr.” During the course of the two-day ore tenus proceeding, the testimony from AYH officials established that only the local school authorities, in this case the Blount County Board of Education and the Shelby County Board of Education, had the authority to determine where a child residing in its district attended school, regardless of zoning. There was also limited testimony from AYH officials regarding the number of hours and the course of curriculum A.W. and W.B. received while attending school within the Blount and *760 Shelby County school systems, respectively. The plaintiffs point out that AYH, pursuant to its contract with DYS, had a duty to provide A.W. and W.B. with an education that complied with state law and Department of Education regulations. They also contend that there was some sort of agreement between AYH and the respective boards of education regarding A.W. and W.B.’s educational arrangements. Unfortunately, the only people who testified regarding these issues were AYH officials. The trial court in this case dismissed the claims against Fuller and Carr apparently before the plaintiffs had a chance to depose them. Fuller’s and Carr’s affidavits appear to offer another side of the story.
■Carr, in his affidavit, states, in part:
“[AYH] officials contacted the Blount County Board of Education sometime in or around August of 2006. The contact was made to the Board of Education. The subject of the discussions related to educational services that could be provided „to students who would be placed in a new Alabama Youth Homes facility located in Blount County, Alabama.
[[Image here]]
“Discussions with our Blount County staff and AYH related to what education services would be beneficial and appropriate within the structures of the AYH program: what counseling; what individualized services; what transportation would be needed and provided.”
(Emphasis added.)
Fuller, in his affidavit, states, in part:
“Stated otherwise, the [Shelby County] Board has implemented a cooperative agreement with [AYH] since at least 1998....
“Students who are placed in the program of the Board by [AYH] receive a full day of instruction by highly qualified teachers pursuant to the State approved curriculum. It is a full day of school. It is my understanding that Donna Dickson monitors the program with [AYH].”
(Emphasis added.)
As previously noted, Randy Hale, the program director for AYH, testified that the plaintiffs attended school only 3 hours and 15 minutes per day. He also stated that, upon inquiry as to the appropriateness of those hours, he had been informed by someone at the Blount County Board of. Education that “everything was fine.” In other words, there appears to be outstanding issues that can be resolved only by further discovery and additional cross-examination of AYH officials. Consequently, we conclude that the trial court’s judgment in favor of AYH, under the circumstances, was premature and that it should have deferred rendering a judgment in favor of AYH pending further discovery. Accordingly, the judgment of the trial court in favor of AYH is reversed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
LYONS, STUART, PARKER, and SHAW, JJ., concur.
COBB, C.J., and WOODALL and MURDOCK, JJ., concur in the result.